UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

ALEX NELSON, et ux.,                            )
                                                )
      Plaintiffs,                           )
                                                )
v.                                              )      No. 4:18-cv-1561 JCH
                                                )
CITY OF ST. LOUIS, etc., et al.,                )
                                                )
      Defendants.                           )

**MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS
OF INDIVIDUAL DEFENDANTS LEYSHOCK, ET AL.**

Plaintiffs Alex and Iris Nelson, husband and wife, have filed a second amended

complaint [ECF 38], asserting multiple claims against all defendants under 42 U.S.C. §1983.

The  individual defendants--all police officers employed by the City of St. Louis at the relevant

time--now seek judgment on the pleadings on the basis of qualified immunity.

Insofar as pertinent to this motion, plaintiffs allege that defendants arrested them without

probable cause (count I), infringed their First Amendment rights of assembly and freedom to

observe and record police activity by arresting and mistreating them (count II), conspired with

the City of St. Louis and among themselves to deprive plaintiffs of their constitutional rights

(count III), and subjected plaintiffs to excessive force in the course of arresting them (count XII).

While it is said that motions for judgment on the pleadings are disfavored, the standard

for ruling on such a motion is fundamentally the same as the standard for determining a motion

to dismiss for failure to state a claim.  That is, the facts alleged in the complaint must be viewed

in the light most favorable to the non-movant, but there must nevertheless be sufficient factual

matter in the complaint to state a claim that is plausible on its face.  Merely pleading formulae or

conclusions does not suffice.  A motion for judgment on the pleadings may be granted if the movant is entitled to judgment as a matter of law.  *Montin v. Moore,* 846 F.3d 289 (8th Cir. 2017); *Greenman v. Jensen,* 787 F.3d 882 (8th Cir. 2015); *Gallagher v. City of Clayton,* 699 F.3d 1013 (8th Cir. 2012).

Plaintiffs' second amended complaint contains considerable material from the record in *Ahmad v. City of St. Louis,* 4:17-cv-2455, including transcripts of preliminary injunction testimony, a video exhibit, and multiple other exhibits.  See ECF 38-1 through 38-9 (Ex. A-I). Of course, this Court is entitled to consider  these exhibits as part of the pleadings on a motion for judgment on the pleadings.  *Greenman v. Jensen,* supra.

Facts

Some basic facts are not in dispute.   Plaintiffs resided in downtown St. Louis and were aware of disturbances near their building on the night of September 17, 2017.  They claim that they ventured out of their building to satisfy their curiosity as to what had happened.  They were then caught up in the mass arrest.  2nd amended complaint [ECF 38], ¶¶128-32, 144.  Some 123 persons were arrested on September 17, by officers of the St. Louis division of police (usually referred to as the St. Louis Metropolitan Police Department), acting under the direction of defendants Leyshock and Sachs.  Lt. Boyher and Sgts. Karnowski, Jemerson and Rossomanno were front-line supervisors during the mass arrest.  In the course of the mass arrest, some officers deployed pepper spray against arrestees.  All arrestees, including plaintiffs, certainly were handcuffed and transported to jail.  The arrestees were released in 24 hours and charges were never filed.  ¶¶74-75, 96, 115-16.

Defendant Leyshock approved the mass arrest in light of experience with nighttime protest activity earlier in the evening of September 17, when a crowd of protesters left a peaceful

protest near police headquarters west of the downtown are and began a rampage through the center of downtown.  The crowd vandalized property and assaulted or threatened to assault police officers.  See ¶¶46, 58; Ex. E [ECF 38-5], pp. 9-12.  For a while, it appeared that the crowd had dissolved, but around 9 or 9:30 p.m., it appeared to reconstitute itself.  New reports came to defendants Leyshock and Sachs of assaultive behavior by the crowd congregated around Tucker Blvd. and Olive St.  Ex. E, pp. 192-93.   Because there were insufficient officers available to effect arrests at that time, police units ("civil disobedience terms" or "CDTs") that had been withdrawn had to be recalled.  *Id.* pp. 21-22.  Pending the arrival of the CDTs--whose officers were equipped with protective riot gear including helmets and face shields, Sgts. Rossomanno and Jemerson gave repeated dispersal orders to the crowd along Tucker.  *Id.*, pp. 23, 29-30.  However, instead of dispersing, the crowd migrated to Tucker and Washington, where it remained, milling about and blocking the intersection.  Although the crowd at that time was not engaged in violence or vandalism, Ex. G [ECF 38-7], defendants Leyshock and Sachs were acutely aware of the behavior of similar crowds on the two preceding nights, when violence broke out and police officers were injured.  In addition, the crowd at Tucker and Washington included persons known to have participated in violent protests on the preceding days and persons wearing masks and goggles.  Ex. E, pp. 12, 68, 130; see also Ex. G.

After the CDTs arrived, and the dispersal orders had been without effect, defendant Leyshock ordered the police to form lines encircling Tucker and Washington and instructed them to arrest all persons on the street at the time.  The police lines accordingly closed in.  Plaintiffs and others attempted to pass the police lines but could not.  2nd amended complaint ¶¶63-69, 139-40.  Finally, the police lines forced the crowd into a dense pocket at Tucker and Washington and officers proceeded to arrest the entire group.  To do so, officers singly or in groups of two or

three took individuals into custody. The video included in the complaint shows some use of pepper spray by a few officers, and some other officers gesturing with large canisters of pepper spray but not discharging any spray. Ex. G. Defendant Rossomanno is the only defendant alleged or shown to be in the immediate vicinity of any arrestee, but plaintiffs do not allege that he was within their immediate vicinity. ¶¶94, 144-46.

Plaintiffs do not specifically allege action by any named defendant that injured them. Rather, they allege that "defendants" or "officers" pepper sprayed them, handcuffed them too tightly, manhandled them, and denied them first aid for the pepper spray. ¶¶145ff. They allege some lingering numbness of hands due to the handcuffing and allege temporary impairment of vision due to the pepper spray. ¶¶146, 153. Plaintiff Alex Nelson asserts that "officers" dragged him along the street, causing injuries to his face, arm and shoulder. ¶154. Plaintiff Iris Nelson alleges that "an officer" twisted her arms. ¶148. Both plaintiffs assert that the encirclement and mass arrest that they call "kettling" was in and of itself an application of excessive force. ¶254.

Plaintiffs allege that all defendants were part of a conspiracy with City officials and "others" to illegally arrest and mistreat protesters in the City of St. Louis in September 2017. The gist of the conspiracy claim is set out in the following paragraphs of the second amended complaint:

> 181. Defendants, acting in their individual capacities and under color of law, conspired together and with others, and reached a mutual understanding to undertake a course of conduct that violated Plaintiffs' civil rights.
> 182. The City of St. Louis itself was a member of the conspiracy because throughout the night, the highest levels of the SLMPD, Department of Public Safety, and City government were involved in the planning, monitoring and/or execution of this event.
> 183. As described above, Defendants Leyshock, Sachs, Jemerson, and Rossomanno conspired to design and implement the illegal kettling plan, with the intent to unlawfully arrest and use excessive force on Plaintiff.
> 184. Defendants Boyher and Karnowski joined the conspiracy when they directed officers under their control and supervision to execute the illegal kettling plan, with the intent to unlawfully arrest and use excessive force on Plaintiff.

The complaint does not reference any participation in any events of September 17 by anyone other than plaintiffs, protesters, and City police officers and officials.  There is no allegation that defendants Leyshock, Sachs, Boyher, Rossomanno, Jemerson or Karnowski personally participated in the actual arrest of plaintiffs.  One can at most infer that defendants Davis and Harrison are the "officers" that physically contacted plaintiffs, although plaintiffs also allege actions by a number of "John Doe" defendants. ¶18.

Plaintiffs admit that there had been violence earlier that night in connection with the group that was to be encircled, and acknowledge that orders to disperse had been given repeatedly.   They also acknowledge that many persons in the putative class were sporting masks and goggles, ¶¶89-90, and the amended complaint shows that a crowd was milling about in the intersection of Tucker and  Washington, blocking the intersection.  Ex. G; see also Ex. E, pp. 12-13, 24, 71.

Although the plaintiffs allege a number of prior incidents in which St. Louis police utilized pepper spray in mass protest situations, ¶¶41-43, there is no allegation in the complaint of any previous conduct of a mass arrest by City police.  Also, plaintiffs do not allege any medical expenses, lost wages, or any medical treatment of any kind for their alleged injuries, although they do allege "medically diagnosable" emotional distress.  ¶246.

**1.      Defendants are qualifiedly immune to plaintiffs' alleged claims, because the law of intracorporate conspiracy under 42 U.S.C. §1983 is unsettled and defendants had no notice in 2017 that their joining in planning, directing, or executing a mass arrest of disorderly protesters was unconstitutional.**

Defendants' argument concerning qualified immunity to plaintiffs' conspiracy claim, on which depends the entire liability of the supervisory defendants (Leyshock, Boyher, Sachs, Jemerson,  Karnowski and Rossomanno) who did not participate in the physical arrest of plaintiffs, is quite simple:  Because the application of the intracorporate conspiracy doctrine has not been addressed authoritatively in §1983 cases in this Circuit, this Court must apply qualified immunity here.  This conclusion follows from *Ziglar v. Abbasi*, 137 S.Ct. 1843 (2017). In that case, the Supreme Court declared that the government officers involved in alleged intentional constitutional violations were entitled to qualified immunity, observing that close and frequent consultations to facilitate the adoption and implementation of policies are essential to the orderly conduct of governmental affairs, and if those discussions, and the resulting policies, were to be the basis for private suits seeking damages against the officials as individuals, "the result would be to chill the interchange and discourse that is necessary for the adoption and implementation of governmental policies" 137 S.Ct. at 1868-69,

To be sure, *Ziglar* was decided under §1985(3), but the principles of qualified immunity applied in *Ziglar* are identical to immunity principles applied in claims under §1983. E.g., *Ashcroft v. al-Kidd,* 563 U.S. 731 (2011); *Plumhoff v. Rickard,* 134 S.Ct. 2012 (2014); *Hanson v. Best,* 915 F.3d 543 (8th Cir. 2019).   The principles enunciated in *Ziglar* apply with particular force in regard to defendant supervisory officers.  Plaintiffs' amended complaint shows, at a minimum, that defendants were officers in the field, attempting to police civil disorder, and dealing with a crowd that dismembered and reconstituted itself several times, committing acts of violence and vandalism in the center of the City's downtown.  The defendants were acting in light of behavior of similar crowds during the preceding two nights, when, after nightfall, violence broke out, including a near-riot at the Mayor's home and numerous assaults on police

6

officers in St. Louis and in nearby University City.  Ex. E, pp. 6-7, 182-83; see also *Ahmad v. City of St. Louis,* 2017 U.S.Dist.LEXIS 188478, slip op. at 8.   There is no dispute that the defendant supervisors agreed or consulted together regarding whether plaintiffs should be arrested, and even if it is assumed that they also agreed that force could be used, it does not follow that reasonable officers in their situation would have known that such consultations or agreements would render each of them liable to any plaintiff who was arrested or subjected to the use of force.

Defendants Davis and Harrison are likewise qualifiedly immune to liability as to the §1983 conspiracy claim.[1]  Whether or not these defendants personally had contact with plaintiffs, they cannot be liable for conspiracy, for they, too, are employees of the same entity, the City.  As such, they were not on notice in September 2017 that their conduct in following orders to encircle and arrest the crowd at Tucker and Washington, including plaintiffs, was violative of plaintiffs' constitutional rights.  Line officers have little choice but to obey supervisors' directions.  While such officers can be liable for their individual conduct in using force on plaintiffs, they cannot be held to have known at the time that their conduct in participating in a mass arrest could be part and parcel of an actionable conspiracy.  See, e.g., *Ashcroft v. al-Kidd,* 563 U.S. 731, 742 (2011)("violative nature of particular conduct" must be clearly established).  Indeed, in *al-Kidd,* the Supreme Court noted that the Attorney General could not be deemed plainly incompetent or a knowing law violator where eight appellate judges agreed with his judgment in that case of first impression.  Since neither the Supreme Court nor the Eighth Circuit

---

[1] In cases alleging a §1983 conspiracy, some courts recognize the necessity of a heightened pleading standard so as to overcome qualified immunity defenses.  E.g., *Babb v. Dorman,* 33 F.3d 472 (5th Cir. 1994); *Christopher W. Bruce Living v. Polk County Attorney's Office,* 2018 U.S. Dist. LEXIS 231304 (S.D.Ia. 2018).  The deficiencies of plaintiff's complaint in this regard simply reinforces the propriety of qualified immunity.

has held that officers in a mass arrest situation are subject to conspiracy liability for obeying their superiors, and since the Circuits themselves do not agree on intracorporate conspiracy liability under §1983, see, e.g., *Bowie v. Maddox,* 642 F.3d 1122 (D.C.Cir. 2011), defendants Davis and Harrison are likewise neither plainly incompetent nor knowing law violators under the circumstances.

Judgment should be entered on counts I-III and XII in favor of defendants Leyshock, Boyher, Sachs, Jemerson, Karnowski and Rossomanno, as their liability on those counts rests entirely on the intracorporate conspiracy theory, and they enjoy qualified immunity in regard to those claims. Judgment in favor of defendants Davis and Harrison should also be entered on counts III and XII (as it relates to the technique of mass arrest or "kettling"), because they are qualifiedly immune to the conspiracy claim and the claim of excessive force by "kettling."

**2.      Judgment on the pleadings should be entered in favor of defendants on the claims based on illegal retaliatory arrest and application of excessive force (counts I, II and XII), because defendants are qualifiedly immune to those claims, in that defendants did not violate plaintiffs' clearly established constitutional rights.**

It is elementary that liability under 42 U.S.C. §1983 is personal and not vicarious, and so defendants are liable under the statute only for their individual acts. E.g., *Doran v. Eckold,* 409 F.3d 958 (8th Cir. 2005)(*en banc*); see also *Ashcroft v. Iqbal,* 556 U.S. 662, 677 (2009); *Calgaro v. St. Louis City (MN),* 919 F.3d 1054 (8th Cir. 2019).   In assessing the individual acts of the defendants for qualified immunity, the Court will apply the established analysis:  first, did the conduct at issue violate a constitutional right, and, second, was that right clearly established at the time of the alleged conduct?  E.g., *Pearson v. Callahan,* 555 U.S. 223 (2009).  In answering the second question, it is critical that the constitutional right not be defined at a high level of

generality.  E.g., *Mullenix v. Luna,* 136 S.Ct. 305 (2015).  "The 'clearly established' standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'"  *District of Columbia v. Wesby,* 138 S.Ct. 577, 590 (2018).

   *Unlawful arrest.*  With regard to the allegedly unlawful arrest, the amended complaint as a whole shows that, in fact, the police had probable cause or arguable probable cause to arrest plaintiffs.[2]  At the time defendants Leyshock and Sachs determined that a mass arrest should occur, the amended complaint shows that the following facts were known or had been reliably reported to them:  a large crowd was milling about the intersection of Tucker and Washington, in fact impeding traffic; that crowd included persons wearing masks and goggles, suggestive of intentions to confront and resist police; that crowd included persons who had been involved in disorderly activity downtown in the past several hours; that crowd had disregarded repeated orders to disperse; at least some members of that crowd had assaulted or threatened officers earlier; and that similar crowds had resorted to violence on the two preceding nights.  See 2nd amended complaint ¶¶46, 53-54, Ex. E *passim.,* Ex. G.

   The determination of probable cause is an objective one:  whether the facts and circumstances known to an officer, or collectively known to the police, at the time would warrant the officer in believing that an offense had been committed and that the arrestee had committed it?  E.g., *District of Columbia v. Wesby,* supra.  The subjective belief of an officer as to the

_____

[2] If the officers had probable cause or arguable probable cause, the "retaliatory arrest" claim of count II fails along with the illegal arrest claim of count I.  *Nieves v. Bartlett,* 139 S.Ct. 1715 (2019).  It should also be noted that plaintiffs do not assert that they were present to gather news or record police actions for publication, so it would seem that their "freedom of the press" challenge is really a generic First Amendment claim..

offense which has been committed is immaterial, as is any subjective animus of the officer.  E.g., *Nieves v. Bartlett,* 139 S.Ct. 1715 (2019); *Devenpeck v. Alford,* 543 U.S. 146 (2004). Moreover, in situations of civil disorder, if there are reasonable grounds to believe that a group has been acting and will act as a unit, it is reasonable to treat the group as a unit in assessing probable cause to arrest the group's members.  *Bernini v. City of St. Paul,* 665 F.3d 997, 1003-04 (8th Cir. 2012); see also *Carr v. Dist. of Columbia,* 573 F.3d 401, 408 (D.C.Cir. 2009).   Above all, the determination of probable cause is made from the standpoint of the officer in the field, based only on the facts known or knowable by the officer, and not in an exercise of judicial hindsight. E.g., *White v. Pauly,* 137 S.Ct. 548, 550 (2017); *Herring v. United States,* 555 U.S. 135 (2009).

In the case at bar, defendants Leyshock and Sachs had ample probable cause or arguable probable cause to believe that the group milling about Tucker and Washington was a unit, and that the unit had engaged in violence and vandalism previously.  It was reasonable to infer that, left undisturbed, this crowd would erupt in further disorder.  Although the crowd was not exhibiting violent behavior as it milled about Tucker and Washington, probable cause to arrest does not become stale. E.g., *United States v. Watson,* 423 U.S. 411 (1976).  It took time to assemble the necessary force to accomplish the mass arrest.  Under the circumstances, arrest of the members of the unit was entirely proper.  This is so even with regard to plaintiffs, who claim that they were accidentally swept into the net.  Under the circumstances, Leyshock and Sachs could reasonably have believed that everyone milling about the intersection was part of the unit, particularly since those present had apparently disregarded multiple dispersal orders.[3]

---

[3] That plaintiffs did not hear warnings does not mean warnings were not given.  E.g.,*Malone v. Hinman,* 847 F.3d 949 (8th Cir. 2017).

At a minimum, defendants had arguable probable cause to arrest plaintiffs.  Even if the officers were mistaken about the nature of the crowd and plaintiffs' role in it, that mistake was reasonable.  Given all of the circumstances, the officers could reasonably believe that the crowd was acting as a unit and that its members accordingly could be treated as a unit.  In addition, the officers could reasonably believe that the members of the crowd had violated a variety of statutes and ordinances relating to impeding traffic, unlawful assembly, and peace disturbance generally, e.g., Mo.Rev.Stat. §§574.010, 574.040, 574.060.  Compare *White v. Jackson,* 865 F.3d 1064 (8th Cir. 2017) with *Bernini v. City of St. Paul,* 665 F.3d 997 (8th Cir. 2012).  This conclusion is reinforced by the able opinion of Clark, J., in *Burbridge v. City of St. Louis,* 2019 U.S. Dist. LEXIS 219483 (E.D.Mo. 2019).  In that case, which arose out of the same incident at issue here, Judge Clark concluded that the defendant officers were entitled to qualified immunity on a claim of unlawful arrest by a plaintiff who was arrested at the same time and place as the Nelsons.[4]

In this case, the factors impelling Lt.Col. Leyshock and Lt. Sachs to decide to arrest plaintiffs have been delineated above.  Even if defendants Leyshock and Sachs were mistaken in believing that the group milling about Tucker and Washington was acting as a unit and presented a danger to the public, that mistake, in light of all the circumstances, was reasonable, because they reasonably believed that it was important to control a chaotic and potentially combative scene and prevent escalation of disorder.  See *Kelsey v. Ernst,* 933 F.3d 975 (8th Cir. 2019)(*en banc*); *Rudley v. Little Rock P.D.,* 935 F.3d 651 (8th Cir. 2019).   The other defendants (Boyher, Jemerson, Karnowski and Rossomanno) acted on the orders of their superiors.  Their reliance on the directives of their superiors was entirely reasonable.  See *Ehlers v. City of Rapid City,* 847

---

[4] Defendants submit that Judge Clark's opinion, rendered on a full record on summary judgment, is more persuasive than the opinion in *Ahmad v. City of St. Louis,* supra.  As the *Ahmad* Court itself noted, its findings were provisional and subject to change.

11

F.3d 1002, 1010 (8th Cir. 2017).  Nothing in the amended complaint shows that any other

defendant had superior means of knowledge or had any reason to question the judgment of

Leyshock and Sachs, both of whom had been involved in policing disorders during that entire

weekend.  In short, defendants are qualifiedly immune to liability for the mass arrest.

Qualified immunity is particularly appropriate with regard to plaintiffs' fanciful claim in

count XII that the mass arrest--"kettling" in plaintiffs' patois--is an application of excessive force

in and of itself.  Clearly, there is no settled law that mass arrests are *per se* violations of the

Fourth Amendment.  While defendants concede that the execution of the mass arrest was not a

model operation, there can be no basis to conclude that defendants were objectively unreasonable

in ordering or executing the mass arrest as such.  Mass arrests have been approved in similar

circumstances.  *Bernini,* supra; *Carr v. Dist. of Columbia,* 587 F.3d 401 (D.C.Cir. 2009).

Certainly it cannot be said that it was "clearly established" in 2017 that officers could not

conduct a mass arrest of a crowd for violations of laws relating to traffic control and unlawful

assembly.

*Excessive force.*  Defendants are immune from liability for the use of excessive force, if

any, by individual officers for three reasons:  first, the amended complaint fails to show that the

supervisory defendants (Leyshock, Sachs, Boyher, Jemerson, Karnowski, Rossomanno) knew

that line officers were using any excessive force; second, insofar as the supervisors did not

personally observe the use of unreasonable force, it was reasonable under the circumstances for

them to believe that officers were using only necessary force to accomplish the arrest of

plaintiffs; and, third, it was and is not clearly established that the use of pepper spray, tight

handcuffing, arm twisting, or brief dragging of an arrestee constitute anything more than *de*

*minimis* use of force, which is not a cognizable Fourth Amendment violation of which defendants knew or should have known.[5]

Nothing in the record shows that the supervisory defendants (Leyshock, Sachs, Boyher, Jemerson, Karnowski or Rossomanno) personally participated in any use of force against plaintiffs.  Defendant Rossomanno is alleged to have been closely supervising the arrests and likely was aware that pepper spray was being used.  However, nothing in the record shows, or even allows a reasonable inference, that either Sgt. Rossomanno or any other supervisory defendant knew of any spraying of plaintiffs in time to have intervened.  The supervisors cannot, therefore, be liable for the alleged use of force against plaintiffs.  E.g., *Wilson v. Northcutt,* 441 F.3d 586 (8th Cir. 2006).

The defendant supervisors are also entitled to qualified immunity because, at the time of the mass arrest (and still) it was not clearly established that pepper spray, handcuffing, or arm twisting or dragging were anything other than *de minimis* uses of force, and so defendants could reasonably believe that such force did not amount to a constitutional violation.  It is well settled that not every slap or kick or other similar application of non-lethal force is a Fourth Amendment violation, e.g., *Graham v. Connor*, 490 U.S. 386 (1989),  but the Eighth Circuit has not yet explicated just when a use of force passes the *de minimis* threshold, or whether there really is a *de minimis* threshold; nor has the Eighth Circuit determined the extent to which the nature of actual injury is determinative of the issue of excessiveness.  In *White v. Jackson*, 865 F.3d at 1080, the Eighth Circuit held that placing a knee on an arrestee's back in the process of the arrest

---

[5] In addition, assuming plaintiffs seek damages on account of a denial of immediate first aid, defendants had no notice that it was clearly established in September 2017 that a failure to help arrestees wash off pepper spray was deliberate indifference to serious medical needs.  See *A.H. v. St. Louis County,* 891 F.3d 721 (8th Cir. 2018).

was not excessive force, notwithstanding lack of resistance.  In *Crumley v. City of St. Paul*, 324
F.3d 1003 (8th Cir. 2003), the Court held that handcuffing so tightly as to cause bleeding,
without medical evidence or any other evidence of long-term injury, did not amount to a Fourth
Amendment violation.  On the other hand, the Eighth Circuit has also held that force causing a
back contusion can amount to excessive force, with the focus on the "excessiveness" of the force,
not the degree of injury, and has intimated that the application of pepper spray could be
considered excessive force if any use of force was unreasonable.  Compare *Peterson v. Kopp,*
754 F.3d 594 (8th Cir. 2014) with *Chambers v. Pennycook*, 641 F.3d 898 (8th Cir. 2011).
Significantly, *Peterson* held that pepper spraying an arrestee in the face, causing pain and
discomfort lasting several days and some "peeling" under the eyes, was a *de minimis* use of
force, and the officer using the force was entitled to qualified immunity. 754 F.3d at

Recently, the uncertainty of the law in this Circuit on this subject was cast in sharp relief
by the multiple opinions in *Robinson v. Hawkins*, 937 F.3d 1128 (8th Cir. 2019).  In that case,
the majority of the panel held that shoving an arrestee up against a car, and handcuffing her,
causing pain and bleeding from the wrists, did not amount to unconstitutionally excessive force,
thus compelling a grant of qualified immunity.  All of the opinions in *Robinson* reflect the
prevailing uncertainty as to whether some minimum level of injury is necessary to establish a
Fourth Amendment violation.  This very uncertainty in the law compels the grant of qualified
immunity to defendant supervisors in regard to the claim of excessive force.   See *Dist. of
Columbia v. Wesby,* 138 S.Ct. at 590 ("precedent must be clear enough that every reasonable
official would interpret it to establish the particular rule the plaintiff seeks to apply").

In this case, under all the circumstances as derived from the amended complaint as a
whole, it is clear that no one could believe that handcuffing arrestees, even tightly, would amount

14

to more than *de minimis* force.  In addition, defendants could reasonably have believed that the use of pepper spray by officers in the course of arresting plaintiffs was either arguably reasonable--as it was impossible to tell  from a distance if anyone in the group was resisting or struggling against handcuffing or not--or was not such force as was inflicting more than *de minimis* injury, and so was not amounting to unreasonable force.   In other words, especially in the unusual context of a mass arrest, a reasonable police officer could have believed that as long as the force used did not cause more than *de minimis* injury to an arrestee, the use of force was not unconstitutional.  See *Wright v. United States,* 813 F.3d 689 (8th Cir. 2015).  *A fortiori,* in the context of a mass arrest, defendant supervisors could also reasonably have believed that as long as the pepper spray and handcuffing did not obviously cause more than *de minimis* injury, the force being used by line officers was not unconstitutional.  The arm twisting and dragging alleged by plaintiff Alex Nelson is likewise within the realm of arguably *de minimis* force, and so those allegations do not defeat qualified immunity.  See *White v. Jackson,* 865 F.3d at 1080 (pushing to ground and knee in back not unreasonable despite lack of resistance).

In sum, judgment in favor of defendants should be entered on all federal claims of unlawful arrest and excessive force against them, on the basis of qualified immunity.

Conclusion

For the foregoing reasons, judgment on the pleadings can and should be entered in favor of defendants on counts I-III and XII of the second amended complaint.

> Respectfully submitted,
> JULIAN L. BUSH
> CITY COUNSELOR
> /s/ Robert H. Dierker
> Robert H. Dierker 23671(MO)
> Associate City Counselor
> dierkerr@stlouis-mo.gov
> Brandon Laird 65564(MO)

15

Associate City Counselor
Abby Duncan 67766(MO)
Associate City Counselor
Megan Bruyns 69987(MO)
Assistant City Counselor
Amy Raimondo 71291(MO)
Assistant City Counselor
1200 Market St.
City Hall, Rm 314
St. Louis, MO 63103
314-622-3361
Fax 314-622-4956

ATTORNEYS FOR DEFENDANTS

16