IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ALEX AND IRIS NELSON, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Cause No. 4:18-cv-01561 (JCH) |
| | ) |
| CITY OF SAINT LOUIS, MISSOURI, et al. | ) |
| | ) |
| Defendants. | ) |

**MOTION TO CONTINUE DISCOVERY INTO JOHN DOE DEFENDANTS AND ALLOW LATER AMENDMENT OF PLEADINGS
REQUEST FOR ORDER REQUIRING DEFENDANTS' DISCLOSE THE IDENTITIES OF REMAINING JOHN DOE DEFENDANTS
AND REQUEST FOR HEARING**

Plaintiffs request this Court allow the parties to continue discovery into John Doe Defendants and give leave for later amendment of pleadings once their identities are uncovered. Plaintiffs further request this Court order Defendants to disclose the identities of the remaining John Doe Defendants. Finally, Plaintiffs request this Court set the matter for a telephonic hearing. In support of this motion, Plaintiffs state as follows:

1. Plaintiffs' claims arise out of a highly publicized mass arrest taking place on September 17, 2017. Plaintiffs filed this lawsuit on September 17, 2018. In this complaint, Plaintiffs alleged that SLMPD officers illegally arrested Plaintiffs, used excessive force against Plaintiffs, and arrested Plaintiffs without probable in contravention of Plaintiffs' civil rights.

2. Plaintiffs were unable to learn the identities of any officers the evening of Plaintiffs' arrest given that, in violation of guidance promulgated by the U.S. Department of Justice and standard law enforcement practices, SLMPD officers wore riot gear without identifiable name tags and masks concealing their faces.

3. Although Plaintiffs had secured a copy of the police report for Plaintiffs' arrest prior to filing, the report only listed one arresting officer for each person arrested, and did not

1

include in the report the other officers involved in the seizure or handling of each arrestee. The police report of the mass arrest lists only some of instances of force used against arrestees; even where the type of force is described, the report fails to identify the person subjected to force. As a result of these deficiencies in documentation, Plaintiffs were forced to list the SLMPD officers who used force against him as John Doe Defendants.

4. This Court has already denied the majority of Defendants' Motion to Dismiss.

5. However, this Court has not yet set a Case Management order given the outstanding John Doe Defendants. This Court issued a show cause order why those Defendants should not be dismissed, but allowed the parties to engage in limited discovery as to their identities.

6. Since that time, Plaintiffs have engaged in discovery efforts to identify the John Doe Defendants. This has caused Plaintiffs to expend significant time and resources over ten months.

7. Initially, Plaintiffs' search for the John Doe Defendants included review of hours of video captured by the documentation team and the Real Time Crime Center cameras.

8. In October 2019, Defendants represented that the major barrier to their ability to satisfy their discovery obligations to identify which officers were responsible was the difficulty identifying where Plaintiffs and other similarly situated litigants were located in the 120-person mass arrest, and with that information Defendants could make inquiries among officers. Plaintiffs sent interrogatories with screenshots and photos identifying Plaintiffs' location, and asking Defendants to specifically identify the SLMPD officers who interacted with Plaintiffs. Defendants responded to those interrogatories without identifying most John Doe Defendants.

9. Plaintiffs further prepared forty separate video clips and almost 100 photos to show exactly where exactly specific SLMPD officers can be seen in all available documentation interacting with Plaintiffs.

10. Basically, Plaintiffs did much of Defendants' work for them.

11. Instead of conducting their own discovery, Defendants also complained that because of the nearly 350 officers present at the scene, it was difficult to know which teams were the most relevant. Plaintiffs then took the depositions of 20 SLMPD officers who served as leaders of various SLMPD teams in order to ascertain the teams closest to the actual incident and the officers most likely to be involved. While these depositions did not result in the identification of many specific officers involved, these depositions showed clearly that only some of the 30 teams of SLMPD officers present actually interacted with arrestees.

12. Defendants then objected to more depositions. Instead, Defendants represented their belief that the Rule 30(b)(6) deposition would be key to identifying the remainder of the John Doe Defendants.

13. There was a lengthy delay in conducting this deposition due to negotiations with Defendants about the notice and the COVID-19 pandemic. Despite having notice of the topics and preparation needed for close to four months, the designee for the 30(b)(6) deposition was woefully unprepared and unable to testify to most of the topics.

14. The witness, Sergeant Charles Wall[3], was unable to visually identify the officers in the many exhibits provided by Plaintiffs, and was unable to identify the officers who deployed pepper spray, prevented Plaintiffs from movement, or made physical contact with Plaintiffs. *See* 30b6 Notice, Topics 4, 5, 6, 8, 9. This is likely because the witness testified that the extent of the Defendants alleged efforts to ascertain the identity of the John Doe defendants consisted of the following:

---

[3] In November, Plaintiff learned that SLMPD had designated Sgt. Charles Wall to be detached full-time to the City Counselor's office in November 2018 to assist the City Counselor's office in gathering information about pending cases, primarily the kettling mass arrest cases. Given the enormous expense to taxpayers to fund that position, it is shocking how little information Sgt. Wall has managed to gather.

3

    a. The witness showed pictures of the Plaintiffs and other similar situated plaintiffs to various, unknown officers and asked about their involvement. He also may have shown some witnesses some videos.

    b. The witness could not account which officers were interviewed or which photos and videos were shown to those officers.

    c. The witness admitted that he did not talk to all, or even most of the SLMPD officers who could be potential John Doe Defendants.

    d. The witness stated that he may have taken some notes of some of his conversations with witnesses. The witness further stated that he may have destroyed these notes.

    e. The witness repeatedly claimed during his deposition that he could not answer relevant questions because he could not remember what was discussed these "interviews" or what evidence was shown to the interviewees.

    f. There does not appear to be any rhyme, reason or logic for the investigation done by the witness, which is especially shocking given that he is a police officer who is specifically trained to conduct investigations.

15. Rule 30(b)(6) requires organizations to prepare its designee to answer questions, and if necessary, to conduct internal reviews and seek out information from its employees to prepare a witness for a 30(b)(6) deposition. *See CMI Roadbuilding, Inc. v. Iowa Parts, Inc.*, 322 F.R.D. 350, 359 (N.D. Iowa 2017). The preparation of Defendants designee fell well short of this standard for many reasons, including:

    a. The witness admitted that he did not talk to all relevant persons to gather information.

    b. The witness could not identify with any certainty the witnesses he interviewed to prepare for the deposition.

4

    c.    The witness could not give a definitive account of the location of the squads listed on Exhibit 1 to the deposition notice and admitted that he had not even talked to many of the sergeants on that exhibit.

    d.    The witness admitted that he did not even attempt to interview numerous persons with relevant information simply because they had left the employment of the St. Louis Metropolitan Police Department, and confirmed that he made no real attempt to find contact information for those individuals.

    e.    The witness stated that because some of the topics in the notice of deposition confused him, he prepared no answers to those questions. The witness did not seek clarification of these topics.

    f.    The witness admitted he had done virtually no preparation since early March, when the deposition was previously scheduled prior to the pandemic. Not surprisingly, his memory of his discussions from earlier in the year was spotty, and he qualified many of his answers.

16.    Following the (30)(b)(6) deposition, Plaintiff sent a letter to Defendants stating that Plaintiffs plan to request a repeat deposition to cure the deficiencies, and requesting to meet and confer in advance about how that witness is prepared. Defendants have refused this request and stated they are unwilling to produce additional witnesses.

17.    Last Friday, Plaintiffs requested Defendants consent to a 60-day extension. Today at 3:30 pm, Defendants partially consented to a 14-day extension. Plaintiffs believe 14 days will be insufficient. In addition, given that the City did not respond to the request until 3:30 pm on Friday, Plaintiffs would not be able to get a ruling from the Court on the motion before the deadline complete discovery on John Doe Defendants expired. Accordingly, Plaintiffs believe it is prudent to file the motion for leave to file an amended complaint in compliance with the deadline.

18. The parties appear to be at an impasse.

19. Defendants' intransigence is preventing this case to move forward. As this Court is well aware, Plaintiffs had to make frequent requests to extend the deadline for completion of this limited discovery. This delay has so far prevented this Court from entering a Case Management Order.

20. Defendants simply seem unwilling to fulfill or acknowledge their discovery obligations. While the shocking lack of documentation and internal investigation of this mass arrest does present specific challenges, courts have long acknowledged Defendants have the duty to engage in substantial discovery to John Doe defendants, particularly "in cases of alleged police brutality, where a plaintiff may be aware of the nature and cause of the injury but not the identity of the perpetrators, and has no realistic means of obtaining the information outside the discovery process." *Martinez-Rivera v. Sanchez Ramos*, 498 F.3d 3, 8 n.5 (1st Cir. 2007)

21. In fact, courts have on occasion taken the step of simply ordering Defendants to disclose the identity of John Doe officers, by internally working with supervisors or administrators who should be able to readily identify those specific individuals who interacted with a given plaintiff. *Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985) ("the court should … order … disclosure of Officer Doe's identity by other defendants named and served.); *Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir. 1981); *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).

22. With this filing, Plaintiffs also submit a Motion for Leave to Amend Plaintiff's Complaint to add the name of some of the John Doe Defendants.

23. Because Plaintiffs through their extensive efforts have identified some of the Defendants, and because of the lengthy delays which have already taken place, Plaintiffs request this Court move to setting a Case Management Order in this matter, but allow the parties to

continue discovery into the John Doe Defendants and give leave for Plaintiffs to amend the pleadings to add named Defendants in the future whose identities were recently discovered.

24.     Alternatively, if this Court decides to dismiss the remaining John Doe Defendants at this stage, Plaintiffs request that dismissal be without prejudice and give leave for Plaintiffs to amend the pleadings to add named Defendants in the future whose identities were recently discovered.

25.     Plaintiffs further request this Court order Defendants to disclose the identities of the remaining John Doe Defendants.

26.     Given the disagreement between the parties and the extent of the delays, Plaintiffs request this Court set the matter for a telephonic hearing.

WHEREFORE, for the reasons stated above, Plaintiffs request this honorable Court extend the deadline for joinder of additional parties and amendment of pleadings to July 29, 2020.

Date: May 29, 2020                                         Respectfully Submitted,


                                                           KHAZAELI WYRSCH, LLC

                                                           By: /s/ *Javad Khazaeli*

                                                           Javad M. Khazaeli, #53735(MO)
                                                           James R. Wyrsch, #53197(MO)
                                                           Kiara N. Drake, #67129(MO)
                                                           911 Washington Avenue, Suite 211
                                                           St. Louis, MO 63101
                                                           (314) 288-0777
                                                           javad.khazaeli@kwlawstl.com
                                                           james.wyrsch@kwlawstl.com
                                                           kiara.drake@kwlawstl.com

                                                           and

ARCH CITY DEFENDERS

Blake A. Strode, #68422(MO)
Michael-John Voss, #61742(MO)
Maureen G. V. Hanlon, #70990(MO)
John M. Waldron, #70401(MO)
Samuel Henderson,
440 N. Fourth Street, Suite 390
Saint Louis, MO 63102
855-724-2489 ext. 1012
bstrode@archcitydefenders.org
mjvoss@archcitydefenders.org
mhanlon@archcitydefenders.org
jwaldron@archcitydefenders.org
shenderson@archcitydefenders.org

and


**Attorneys for Plaintiff**
